## AFFIDAVIT IN SUPPORT OF A
## CRIMINAL COMPLAINT AND ARREST WARRANT

**Mohammad Arif Jan MEHTERZAI**
Also known as Arif Mehterzai
DOB:   Redacted
CITIZENSHIP: Danish
ADDRESS:   Redacted   Copenhagen

This affidavit is being submitted by the affiant, Special Agent Christopher Malone, in support of a criminal complaint and an application for an arrest warrant relating to:

**Mohammad Arif Jan MEHTERZAI**, also known as Arif Mehterzai (hereinafter "MEHTERZAI"),   Redacted   , a citizen of Denmark, and residing at   Redacted     Redacted   , Copenhagen.

I respectfully submit that there is probable cause to believe that the above identified individual has committed the following criminal offense in violation of United States law:

> Unlawful Export of Defense Articles, in violation in violation of Title 22, United States Code, Section 2778(b)(2); Title 22, Code of Federal Regulations, Parts 121.1 and 127.1; Aiding and Abetting and Causing an Act to Be Done, in violation of Title 18, United States Code, Section 2

## AFFIANT'S BACKGROUND

1. I am a Special Agent of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have been employed by HSI for approximately eight years. I have training and experience in the enforcement of the laws of the United States, including the preparation, presentation, and service of criminal complaints, arrests, and search warrants. I am currently assigned to the HSI Cyber Crime Center ("C3"), in Fairfax, Virginia, and was formerly assigned to the HSI Office of the Special Agent in Charge, Washington, D.C. ("SAC/DC"), where I was assigned to the Counter Proliferation Investigations ("CPI") Group; and where I participated in numerous investigations involving the illegal export of licensable defense items. I have also received training in the area of illegal export violations from the Federal Law Enforcement Training Center, in Glynco, Georgia, and I have a Master's Degree in Criminal Justice studies from Boston University.

2. I have personally participated in this investigation and have witnessed many of the facts and circumstances described herein. I have also received information from other federal law enforcement officials relating to this investigation, most significantly from my co-case agent, HSI Special Agent Christopher Chase. I have interviewed witnesses and reviewed documents and evidence during the course of this investigation. The statements contained in this affidavit are based on my own observations, witness interviews, document reviews and reliable information

provided to me by federal law enforcement officials and governmental officials. Because this affidavit is submitted for the purpose of seeking issuance of a criminal complaint and arrest warrant, it does not include every fact known to me concerning the investigation.

## FACTS SUPPORTING PROBABLE CAUSE

### Background

Through knowledge gathered during this investigation, I know the following:

3. MEHTERZAI is a _Redacted_ Danish citizen, currently residing in Copenhagen, Denmark, and is employed as a security guard _Redacted_ In addition to his work as a security guard, MEHTERZAI supplies military equipment worldwide through Internet auction sites operated by eBay, Inc. ("eBay"). MEHTERZAI's eBay user name is "*****ronin*****." The items MEHTERZAI has posted for sale on the eBay sites include a large assortment of United States military equipment such as combat optics, night vision equipment, and infra-red targeting lasers. Many of these posted items are defined as "defense articles," and therefore require a license to be exported from the United States. In addition, several of these items have been identified as property of the United States military.

4. For example, on October 16, 2009, it was observed that MEHTERZAI had posted eBay item number 300356489399 for sale on the auction site, which was an Acquired Tactical Illuminating Laser Aimer ("ATILLA") manufactured in the United States by Night Vision Systems ("NVS") of Allentown, Pennsylvania. The ATILLA is a rifle-mounted, infra-red aiming laser, the beam of which is only visible to those with night vision equipment. MEHTERZAI's eBay posting contained photographs of the ATILLA and accessories, including one photo in which the serial number was discernable. Through tracking of the serial number, law enforcement agents learned that the ATILLA posted by MEHTERZAI for sale on eBay was property of the United States Department of Defense. NVS does not sell the ATILLA to civilians, and the Department of Defense does not resell surplus ATILLAs. Moreover, the ATILLA is controlled for export under the Arms Export Control Act ("AECA") and the International Traffic in Arms Regulations ("ITAR").

5. Similarly, on July 19, 2010, it was observed that MEHTERZAI had posted eBay item number 290434740577 for sale on the auction site, which was a Trijicon TA31F Advanced Combat Optical Gunsight ("ACOG"). The ACOG is a rifle-mounted optic that uses a tritium strip to absorb and focus ambient light in order to enhance low-light vision. The ACOG incorporates automatic sighting compensation for the amount a fired round will drop over distance during flight. MEHTERZAI indicated on the eBay site that he had ten ACOGs available, and that they were brand new. The eBay posting contained photographs of one ACOG, in which the serial number was discernable. Through tracking of the serial number, law enforcement agents determined that the particular ACOG in the photographs was property of the United States Department of Defense. The Department of Defense regulations prohibit the resale of ACOGs to civilians, but instead require that they be destroyed. Moreover, the TA31F ACOG is controlled for export under AECA and ITAR.

## Summary of Investigation

### A. Identification of Mohammad Arif Jan MEHTERZAI

6. EBay records identified the individual with user name [Redacted] as Arif MEHTERZAI, of Copenhagen, Denmark, using the e-mail address [Redacted] EBay records further revealed that MEHTERZAI listed two addresses: [Redacted] [Redacted] Copenhagen, Denmark, and [Redacted] Denmark. The first address is MEHTERZAI's current residence, while the second address is associated with an individual named [Redacted]

7. PayPal records obtained from eBay indicate that MEHTERZAI established a PayPal account on November 8, 2004. Since that time, MEHTERZAI has sent approximately $234,797.08 in United States currency through the PayPal transfer system and, in turn, has received approximately $118,326.60. MEHTERZAI's user name for the PayPal account is [Redacted]

8. Records obtained from Google, Inc. ("Google") reveal the identity of the subscriber of the e-mail account [Redacted] as Arif MEHTERZAI of Copenhagen, Denmark. Google records include an address for MEHTERZAI as [Redacted] Copenhagen, Denmark. A second address listed on the account is [Redacted] [Redacted] Denmark. Google records further indicate that MEHTERZAI established the e-mail account in 2005, and continues to log into the account very frequently.

9. In e-mail exchanges with suppliers, MEHTERZAI repeatedly identified himself and the Danish shipping address where the goods should be sent. For example, in an e-mail dated August 30, 2010, MEHTERZAI wrote to a seller in the United States, "please send it to: Arif Mehterzai [Redacted] Denmark Thank you."

### B. MEHTERZAI's Knowledge of Export Restrictions

10. E-mail messages sent from MEHTERZAI's e-mail account demonstrate that Mehterzai and his associates are fully aware of the United States restrictions on the export of defense articles. For example, in one e-mail exchange, dated September 8, 2009, a customer located in Europe was negotiating over the price of a defense article Mehterzai was offering to sell him. In response to a request to lower the price, Mehterzai wrote, "and you have to find somebody who will ship it out of USA too…This is the worst part because its not allowed to be shipped out of US, and the person who sends it out can got [sic] to jail for 15 years if they find out…Thats why nobody dares to send it out of US…."

11. In another e-mail exchange, dated October 20, 2009, a seller located in the United States, offered to sell Mehterzai defense articles but refused to ship them outside the United States. The seller wrote, "I received the list of items you want to order, the problem is that I can't ship some of the items on the list outside of the United States, what I could do for you is if you are able to provide me with a US shipping address I will make sure to give you free shipping on all your

orders."  Shortly thereafter, Mehterzai, replied to the seller, "Thats [sic] why i stopped buying from you because its double work for me…The other US guy he makes sure i get my item directly…I'm sorry you couldn't help me out…I will contact you when i find stuffs which is not ITAR…but my customers [sic] wants the ITAR items."

12. Finally, in an e-mail exchange dated February 25, 2010, to a European individual who also sells restricted defense articles on eBay, MEHTERZAI confessed, "The only thing i fear when selling on ebay [sic] that the FBI will contact my local police, and they will pay me a visit…."

### C.  MEHTERZAI's March 2010 Transaction with Individual A

13. MEHTERZAI first contacted Individual A, who is located in the United States, through eBay in March 2009 to inquire about "cool items" that Individual A might have available for sale outside of the eBay auction site.  Individual A responded that he had, among other things, night vision components and combat optics.  MEHTERZAI began making purchases from Individual A beginning in April 2009, and continued throughout October 2010.

14. On or about February 28, 2010, Individual A sent a message to MEHTERZAI, which stated, "I have a friend who has PEQ15s.  They are just out the plastic new with carry case, book, diodes and all he want 2200 i will not ship with my name on it, will use imaginary camera shop."  Based on my investigation, I know that the item referenced in the e-mail is a AN/PEQ-15 Advanced Target Pointer, Illuminator, Aiming Laser ("AN/PEQ-15").  The AN/PEQ-15 is a rifle-mounted, infra-red aiming device manufactured in the United States by Insight Technology for sale to the United States military and law enforcement.  The AN/PEQ-15 contains both visible and infra-red lasers for aiming, target acquisition, and target-area illumination.  Insight Technology does not sell the AN/PEQ-15 to civilians, and the Department of Defense does not sell them as surplus.  Furthermore, I know that the AN/PEQ-15 is controlled for export under AECA and ITAR.

15. Later that same day, on or about February 28, 2010, MEHTERZAI agreed to purchase three AN/PEQ-15s from Individual A for $6,500.  In an e-mail to Individual A, MEHTERZAI wrote, "We have to do thing with 2 invoices so, i don't end up paying a fortune in customs…1st invoice with very low value and the 2nd invoice for the rest…like we used to do…"  Individual A responded, "I will invoice you for $60 for the 3 15's? Then invoice you $6440 and print the $60 for the 7x7x5 box."  MEHTERZAI responded in an e-mail to Individual A that the initial lower invoice should also incorporate another shipment which MEHTERZAI had purchased from Individual A.  Mehterzai wrote:

> The 1st invoice will be used by both items…We will declare 'Camera Light parts' (or do you have a better suggestion/idea) then we will declare it for 60 USD + 208 shipping total of 268 USD…Then this invoice will be used for the RALS and peq shippings [sic]…Since its 2 different companies (usps rals + UPS peq) then nobody will notice this.   Then the 2nd invoice will be 268 – 6500 USD = Total of 6232 USD   Can we work this out?

Individual A responded to MEHTERZAI that the terms were agreeable. Based on my training and experience, I know that the term "RALS" referenced in the e-mail above refers to a Remote Area Lighting System, a self-contained high-power illumination station.

16. Based on my investigation in this case, I know that in the quotes above, MEHTERZAI was requesting that Individual A substantially understate the value of the shipment and conceal the true nature of the shipment on the United States customs declaration forms so that they would not draw the attention of United States or Danish customs officials when it was exported to Denmark. To accomplish this deception, MEHTERZAI explained that Individual A should send two PayPal invoices to pay for the AN/PEQ-15s. The first invoice would be for $60 plus the cost of shipping, and the second for the remainder of the purchase price. Moreover, in his e-mail, MEHTERZAI suggested that Individual A use the same lower-priced invoice to conceal two different shipments. MEHTERZAI also requested that Individual A declare on the lower-priced invoice that the items being shipped were "camera light parts."

17. A review of the PayPal records revealed that MEHTERZAI sent a payment of $268.00 to Individual A on or about February 28, 2010, and a second payment of $6,232.00 to Individual A on or about March 1, 2010. Later on or about March 1, 2010, MEHTERZAI sent an e-mail to Individual A, in which he wrote, "plz don't mention anything about lasers…just rangefinders for cameras or something which is better…." Individual A responded, "What value did you want me to put on the 3 USED rangefinders?" Mehterzai replied, "You must make 2 prints out [sic] of the Low invoice which you got from Paypal…Because since its 2 different shipping companies then they will never know."

18. On or about March 4, 2010, Individual A provided MEHTERZAI with a UPS tracking number for the shipment of AN/PEQ-15s. Records from United Parcel Service, Inc. revealed that the package sent from Individual A was delivered to Hvidovre, Denmark, on March 8, 2010. On that same date, MEHTERZAI sent an e-mail to Individual A stating "I just got them."

### D.    Absence of Export License

19. The Directorate of Defense Trade Controls ("DDTC") at the United States Department of State determined that the AN/PEQ-15, manufactured by Insight Technology, is a defense article under category XII(b) of the United States Munitions List, set forth at 22 C.F.R. Part 121.1. A check of DDTC records revealed that neither MEHTERZAI nor Individual A has ever applied for a license or registered with DDTC, as required to export ITAR-controlled items from the United States to Denmark. Furthermore, neither MEHTERZAI nor Individual A has ever applied or been registered with the Department of Commerce, Bureau of Industry Security, for any type of Commerce license.

## Statutory Provisions

20. The Arms Export Control Act authorizes the President of the United States, among other things, to control the export of defense articles. 22 U.S.C. §2778(a)(1). AECA also gives the President the authority to designate items as defense articles. Id. As a practical matter, that task is performed by the Department of State, with the concurrence of the Department of Defense, in accordance with regulations that are promulgated by the DDTC. 22 C.F.R. Parts 120.1(a) and 120.2. The regulations promulgated by the DDTC are known as the International Traffic in Arms Regulations, and include which items are designated as defense articles. All items that are designated as defense articles are identified by category in a document that is known as the United States Munitions List.

21. All defenses article exporters are required to obtain a valid export license from the DDTC for any defense article -- regardless of its value -- before the article is exported to another country. 22 U.S.C. §2778(b)(2); 22 C.F.R. Part123(a). In practice, several defense articles may be identified on a single export license.

22. It is a violation for anyone to willfully violate any provision of AECA or any rule or regulation issued pursuant to it. 22 U.S.C. § 2778(c). Specifically, it is a crime for any defense article exporter to willfully fail to obtain an export license before exporting a defense article to another country. 22 U.S.C. § 2778(c); 22 C.F.R. Part 127.1(a)(1). Pursuant to the ITAR, it is a violation for a person to conspire to export or to cause to be exported any defense article without a license. 22 C.F.R. Part 127.1. It is also unlawful for any person to "knowingly or willfully cause, or aid, abet, counsel, demand, induce, procure, or permit the commission of any act prohibited by 22 U.S.C. 2778," or any regulation issued thereunder. 22 C.F.R. Part 127.1(d).

**CONCLUSION**

Based on the information set forth above, it is respectfully submitted that there is probable cause to believe that **Mohammad Arif Jan MEHTERZAI**, also known as Arif Mehterzai, has committed the following offense: Unlawful Export of Defense Articles, in violation of Title 22, United States Code, Section 2778(b)(2); Title 22, Code of Federal Regulations, Parts 121.1 and 127.1; Aiding and Abetting and Causing an Act to Be Done, in violation of Title 18, United States Code, Section 2. Therefore, I request that a criminal complaint be issued charging **Mohammad Arif Jan MEHTERZAI**, also known as Arif Mehterzai, accordingly, and that an arrest warrant be issued.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated March _____, 2011.

_____
Christopher Malone, Special Agent
Homeland Security Investigations

Subscribed to and sworn before me on this _____day of March 2011.

_____
United States Magistrate Judge